1  UNITED STATES DISTRICT COURT

2  DISTRICT OF NEVADA

3  SCOTTSDALE INDEMNITY COMPANY,  Case No.: 2:18-cv-00313-APG-VCF

4  Plaintiff  **Order Granting Motion for Summary Judgment**

5  v.  [ECF No. 25]

6  QUALITY MEDICAL IMAGING OF CALIFORNIA, INC., et al.,

7  Defendants

Plaintiff Scottsdale Indemnity Company (Scottsdale) filed this declaratory relief action against its insureds, Quality Medical Imaging of California, Inc. and Quality Medical Imaging, LLC[1] (Quality Medical). Scottsdale seeks declarations that (1) it has no duty to defend a lawsuit filed against Quality Medical (the "*Policarpio* action"); (2) its allocation of defense costs is twenty percent of what the insureds incur in defending the *Policarpio* action; and (3) it is entitled to reimbursement for past defense costs expended in defending the *Policarpio* action that exceed its allocated portion.

Quality Medical moves for summary judgment, arguing an endorsement to the policy unambiguously deletes the provision on which Scottsdale relies to argue that Quality Medical has the duty to defend the *Policarpio* action. Scottsdale responds that the endorsement applies only to Wage and Hour Claims, and the *Policarpio* action is not a Wage and Hour Claim. It also

---

[1] The defendants assert in their amended answer that there is no entity named Quality Medical Imaging, LLC and that the proper defendant's name is Quality Medical Imaging of Nevada, LLC. ECF No. 38 at 3. The policy identifies the named insured as Quality Medical Imaging, LLC. ECF No. 3 at 44. Both Quality Medical Imaging of California, Inc. and Quality Medical Imaging of Nevada, LLC are identified in the policy as additional insureds. *Id.*

argues Quality Medical's reading of the policy would render various provisions meaningless so the endorsement cannot have the meaning Quality Medical ascribes to it.

The parties are familiar with the facts and policy provisions, so I will not set them out in full here. I grant Quality Medical's motion because Endorsement 17 unambiguously deletes the provision on which Scottsdale relies to contend that Quality Medical has the duty to defend the *Policarpio* action. To the extent this unambiguous language is rendered ambiguous because of other policy provisions, I construe the ambiguity against Scottsdale as the drafter of the policy.

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

"When there are no disputed material facts," the construction of an insurance policy is "purely a question of law." *Allstate Ins. Co. v. Fackett*, 206 P.3d 572, 575 (Nev. 2009) (en

banc).² I read the insurance policy "as a whole," and analyze its language "from the perspective of one untrained in law or in the insurance business." *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011) (quotations omitted), *as modified on reh'g* (May 23, 2012). I give policy terms "their plain, ordinary and popular connotations." *Id.* (quotation omitted). "In particular, an insurer wishing to restrict the coverage of a policy should employ language which clearly and distinctly communicates to the insured the nature of the limitation." *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1382 (Nev. 1984). "[C]lauses providing coverage are interpreted broadly so as to afford the greatest possible coverage to the insured, [while] clauses excluding coverage are interpreted narrowly against the insurer." *Id.* at 1383.

If a provision in an insurance contract is unambiguous, I must "interpret and enforce it according to the plain and ordinary meaning of its terms." *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). But if an insurance policy is ambiguous, "it will be construed against the insurer, because the insurer was the drafter of the policy." *Fourth St. Place*, 270 P.3d at 1239. "The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted." *Powell*, 252 P.3d at 672 (quotation omitted); *see also Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev. 1994) (stating a contract is ambiguous if it "is reasonably susceptible to more than one interpretation"). Consequently, I interpret the policy "to effectuate the reasonable expectations of the insured." *Fourth St. Place*, 270 P.3d at 1239 (quotation omitted). In evaluating whether the policy is ambiguous, I look at

---

² Quality Medical contends California law governs the policy. Scottsdale argues Nevada law applies but contends there is no material difference between the two states' laws. Because I grant summary judgment in Quality Medical's favor even if Nevada law controls, I will apply Nevada law for purposes of this motion.

3

"the policy as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions." *Id.* (quotation omitted).

Scottsdale issued a Business and Management Indemnity Policy to Quality Medical. ECF No. 3. The policy contains an Employment Practices Coverage Section. *Id.* at 12. Under section A, which includes the insuring clauses, Scottsdale agreed to pay any losses Quality Medical becomes legally obligated to pay by reason of an Employment Practices Claim. *Id.* Employment Practices Claims generally include claims for harassment or discrimination. *Id.* at 13.

Under section F.1 of the policy, Scottsdale has the duty to defend any Claim. *Id.* at 18. Section F.3 states that "[n]otwithstanding" section F.1, "in the event that any Claim is brought as a class action, and all or any part of such Claim involves any actual or alleged violation of the Fair Labor Standards Act of 1938, as amended, or any similar state law, regulation or code, then it shall be the duty of the Insureds and not the duty of the Insurer to defend any such Claim." *Id.* Thus, if section F.3 applies, it places the duty to defend on Quality Medical, not Scottsdale.

Under Endorsement 1,

> 1. In the event [Scottsdale] has the duty to defend a Claim under any Coverage Section in which both Loss that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such Claim includes both covered and uncovered matters or because such Claim is made against both covered and uncovered parties, then:
>    a. this Policy shall pay one hundred percent (100%) of Costs, Charges and Expenses incurred by such Insured on account of such Claim; and
>    b. there shall be a fair and equitable allocation of any remaining loss incurred by such Insured on account of such Claim between covered Loss and uncovered loss based upon the relative legal and financial exposures and the relative benefits obtained.
> 2. In the event the Insured has the duty to defend a Claim under any Coverage Section in which both Loss that is covered by the applicable Coverage Section and loss which is not covered by the applicable Coverage Section is incurred, either because such Claim includes both covered and uncovered matters or because such Claim is made against both covered and uncovered parties, then the Insured and the Insurer shall use their best efforts to determine a fair and proper

4

> allocation as between such insured and uninsured loss, taking into account the relative legal and financial exposures and the relative benefits obtained.

*Id.* at 20.

The parties' dispute centers on Endorsement 17, the Wage and Hour Claim Endorsement. *Id.* at 40. This endorsement "modifies insurance provided under" the Employment Practices Coverage Section. *Id.* Endorsement 17 adds a new insuring clause for Wage and Hour Claims to section A of the Employment Practices Coverage Section. *Id.* Additionally, the definition of a Claim is amended to include a Wage and Hour Claim. *Id.* The policy's definitions section is further amended to add definitions for a Wage and Hour Wrongful Act and a Wage and Hour Claim. *Id.* at 40-41. Endorsement 17 also states that section F.3 is "deleted in its entirety." *Id.* at 41.

The parties agree that section F.3 is the only provision in the policy that could shift the duty to defend from Scottsdale to Quality Medical. But they dispute the meaning of Endorsement 17 and whether it deletes section F.3 for all claims or only for Wage and Hour Claims. Quality Medical contends that by the endorsement's plain terms, section F.3 is deleted in its entirety and for all purposes. Scottsdale contends that Endorsement 17 deletes section F.3 only for Wage and Hour Claims because otherwise certain policy provisions would be rendered meaningless.

Endorsement 17 amends and modifies the policy, adding a new insuring clause to the Employment Practices Section, amending the policy's definition section to include Wage and Hour Claims in the definition of a "Claim," and adding definitions for Wage and Hour Claims and Wrongful Acts. By its terms, the endorsement "CHANGES THE POLICY" and "modifies insurance provided under the . . . EMPLOYMENT PRACTICES COVERAGE SECTION." *Id.*

at 40.  Endorsement 17's plain language unambiguously deletes section F.3 "in its entirety." *Id.* The endorsement does not suggest that it deletes section F.3 only for Wage and Hour Claims. Had Scottsdale wanted to delete section F.3 for only Wage and Hour Claims, it could and should have including express language making that clear to its insureds.  It did not do so.

      To the extent other provisions in the policy make this language ambiguous because it would render those provisions meaningless (specifically sections F.5 and F.7, as Scottsdale argues), Scottsdale created any ambiguity because it drafted the policy and its various endorsements.  I must construe any ambiguity against Scottsdale and in favor of preserving the reasonable expectation of the insureds.  An endorsement stating that a particular policy provision is "deleted in its entirety" would create in the insured a reasonable expectation that the policy provision was deleted for all purposes, absent some other limiting language expressly explaining otherwise.  Indeed, it is difficult to conceive of an insured ascribing any other meaning to such a plain and explicit policy provision.  An insured reasonably would believe that any remaining references to the insured having a duty to defend were surplusage that inadvertently remained in the policy due to the interplay between a form policy modified by a host of endorsements.

      In sum, Endorsement 17's plain and unambiguous language deleted section F.3 entirely from the policy for all purposes.  I acknowledge that contract interpretation strives to give meaning to every clause and Quality Medical has not offered an explanation for what meaning sections F.5 and F.7 could have once section F.3 is deleted from the policy.  However, it is Scottsdale's drafting of the policy and its endorsements that put the principle of giving effect to unambiguous language and construing ambiguities against the insurer at odds with the principle of giving all contract provisions meaning.

6

Because I must give unambiguous language its plain meaning, construe any ambiguities against Scottsdale, and interpret the policy to effectuate the insured's reasonable expectations, I grant Quality Medical's motion. Section F.3 is deleted from the policy in its entirety. It is unclear from the parties' papers whether this ruling ends the controversy in this court. I therefore direct the parties to submit a joint status report regarding what, if anything, remains of this case.

IT IS THEREFORE ORDERED that defendants Quality Medical Imaging of California, Inc. and Quality Medical Imaging, LLC's motion for summary judgment **(ECF No. 25) is GRANTED.** Section F.3 is deleted from the policy in its entirety.

IT IS FURTHER ORDERED that on or before November 9, 2018, the parties shall file a joint status report regarding what, if anything, remains of this declaratory judgment action.

DATED this 22nd day of October, 2018.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE